

Member Name: RYAN HALL
Member Number: 04200 34 97 80A0
Loss Report Number: 2
Date of Loss: 12/21/2018
Company: GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY

## Texas Unsworn Declaration

My name is <u>Mary Ann Rice,</u> my date of birth is <u>March 18, 1960</u>, and my work address is 9800 Fredericksburg Road, San Antonio, Texas 78288, and United States of America.

I declare under penalty of perjury that the foregoing and attached (policy) is a true and correct copy.

E-SIGNED by Mary Ann Rice
on 2021-01-11 15:52:10 GMT
_____
Signature

Executed in Bexar County, State of Texas, on _____ January 11, 2021 _____.
(Date)

Internal

USAA Confidential

0901119cab05ce01



**RENTAL PROPERTY INSURANCE POLICY PACKET**                   DM-04281

GAR 04200 34 97 80A0

RYAN HALL
27 CREEKSIDE DR                          EFFECTIVE:   02-01-18     TO:   02-01-19
PRESTONSBURG KY 41653-8915

# IMPORTANT MESSAGES

Attached are your policy documents and other information you may find helpful concerning your insurance coverages and premiums. Please take a few minutes to review them, and then file them with your policy records.

1) USAA considers many factors when determining your premium. Maintaining your property to reduce the probability of loss is one of the most important steps you can take. A history of claim activity may affect your coverage.

2) Go to usaa.com to view policy coverages and home features.

3) To better serve you, we're offering different deductible choices with this policy. If you'd like to change the deductible shown on the attached declarations, please contact us.

4) Your Policy does NOT include Personal Liability coverage. For information about obtaining this coverage, call USAA at (800) 531-8722 or go to usaa.com.

5) Your policy does NOT cover loss due to flood from any source. For information about obtaining flood coverage from the National Flood Insurance Program (NFIP), call USAA at (800) 531-8722, or contact the NFIP directly.

   If you already have a flood policy, you should review it to make sure you have the appropriate coverage and limits. No automatic increases or adjustments are applied to your policy. Coverage for loss of household contents due to flood may be available at an additional cost. If you have questions, please call a member service representative at the phone number above.

6) Please be advised of recent changes that may impact your billing statement payment plan. Your rental property insurance premium may be subject to taxes or fees imposed by your local government. The amount of the fee or tax is determined by the local government where the insured risk is located. If included in the charges to you, the tax and any collection fee will now be prorated over the billing plan selected instead of being collected in full at first installment.

**THIS IS NOT A BILL**. Any premium charge or return for this policy will be reflected on your next regular monthly statement. To receive this document and others electronically or to view your policy summary online, go to usaa.com. You may also contact us at 1-800-531-USAA (8722).

**DPCSR1 (08-13)**                                                126921-1013
                                                          **Page 1 of 2**

0901119cab05ce01                    USAA Confidential

**THIS PAGE INTENTIONALLY LEFT BLANK**

0901119cab05ce01

USAA Confidential



GAR 042003497 80A0
DM-04281

Garrison Property and Casualty Insurance Company
A Stock Company
**9800 Fredericksburg Road - San Antonio, Texas 78288**
**RENTAL PROPERTY INSURANCE POLICY RENEWAL DECLARATIONS PAGE**
Attach This Declarations To Previous Policy

**Named Insured and Described Location**

RYAN HALL
6086 HIGHWAY 7 S
TOPMOST, KNOTT, KY  41862-8918

Policy Number
GAR  04200 34 97  80A0

Policy Period From: 02/01/18                To: 02/01/19
(12:01 AM standard time at location of the Described Location)

**(Coverages described in this policy are provide ONLY where limits are shown below.)**
**SECTION I – COVERAGES AND AMOUNTS OF INSURANCE**
    COVERAGE A - DWELLING                                       $282,000
    COVERAGE B - OTHER STRUCTURES                     $28,200

**SECTION II – COVERAGES AND LIMITS OF LIABILITY**
    No Coverage Purchased

| | |
|---|---|
| **DEDUCTIBLES (Applies to SECTION I Coverages ONLY)** | |
|     We cover only that part of the loss over the deductible stated. | |
|     ALL OTHER PERILS               $5,000 | |
| **POLICY PREMIUM for Section I and Section II Coverages Above** | $2,215.92 |
| **CREDITS AND DISCOUNTS** (Included in policy premium above)   $1,494.15 CR | |
|     Details on the following page. | |
| **OTHER COVERAGES AND ENDORSEMENTS** | |
|     Forms and Endorsements are printed on the following page. | |
| **STATE SURCHARGES AND TAXES** (shown below if applicable) | $243.77 |
|     Surcharges are printed on the following page. | |
| **TOTAL POLICY PREMIUM** | $2,459.69 |
|     Including Credits, Discounts, Optional Coverages, Optional Endorsements, Surcharges and Taxes. | |
| PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL. STATEMENT TO FOLLOW. | |

FIRST MORTGAGEE:                          LOAN NUMBER:
FIRST COMMONWEALTH BANK
ITS SUCCESSORS AND/OR ASSIGNS
INSURANCE PROCESSING DEPT PO BOX 400
INDIANA, PA 15701

In witness whereof, this policy is signed on  11/03/17

Deneen Donnley, Secretary                          S. Wayne Peacock, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

DP-D1 (08-13)

USAA Confidential

0901119cab05ce01

0901119cab05ce01

Garrison Property and Casualty Insurance Company

**RENTAL PROPERTY INSURANCE POLICY RENEWAL DECLARATIONS PAGE**

**Policy Number:**
GAR 04200 34 97 80A0

**Policy Period:**

| **Inception** | **Expiration** |
|---|---|
| 02/01/18 | 02/01/19 |

**POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.**

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):

| QRDP3 | (08-13) | QUICK REFERENCE - SPECIAL FORM |
|---|---|---|
| DP-3(02) | (08-13) | RENTAL PROPERTY INSURANCE - SPECIAL FORM |
| DP-STL | (08-13) | SPECIAL TOTAL LOSS SETTLEMENT (DWELLING) |

ADDED:

| DP-KY | (08-16) | KENTUCKY SPECIAL PROVISIONS |
|---|---|---|

**YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:**

| HOME AGE DISCOUNT | $1,247.94  CR |
|---|---|
| CLAIMS FREE DISCOUNT | $246.21  CR |

**SPECIFICALLY LISTED BELOW ARE SURCHARGES:**

| KY PREMIUM SURCHARGE | $39.90 |
|---|---|
| KY LOCAL GOVERNMENT TAX | $203.87 |

INCLUDES A 15% COLLECTION FEE.

**DP-OVF(08-13)**

126782-0817

0901119cab05ce01

USAA Confidential

0901119cab05ce01

USAA Confidential

GAR 042003497 80A0

DP-KY (08-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**KENTUCKY SPECIAL PROVISIONS**

## DEFINITIONS

Item **1**. **"Actual cash value"** is deleted and replaced by the following:

**1**. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for obsolescence and a **"deduction for depreciation"**. The **"deduction for depreciation"** will be determined as follows:

For property covered under Coverage A – Dwelling Protection or Coverage B - Other Structures Protection, the deduction will be based on the age and condition of the materials making up the damaged property and will apply to materials, labor, sales tax, and overhead and profit that are included in the cost to repair or replace the damaged property.

For property covered under Coverage C - Personal Property Protection, the deduction will be based on the age and condition of the damaged item and will apply to the cost of the item and any sales tax that is included in the cost to repair or replace the damaged item.

**"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained a partial or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

## SECTION I – ADDITIONAL COVERAGES

Under item **4. Fire Department Service Charge,** the following is added to the first paragraph:

We do not cover fire department service charges if you do not have a contract or agreement with the fire department.

Item **6. Loss Assessment** is deleted in its entirety and replaced by the following:

**6. Loss Assessment.**

    a. We will pay up to $50,000 for your share of loss assessment charged against you by a corporation or association of property owners for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for COVERAGES A – Dwelling and COVERAGE B – Other Structures, subject to all provisions of the policy.

    b. This coverage does not apply to assessments made as a result of damage caused by:

        (1) Earthquake; or

        (2) Land shock waves or tremors before, during or after a volcanic eruption.

0901119cab05ce01

USAA Confidential

c. This coverage applies only to loss assessments charged against you as owner or tenant of the **"described location"**.

d. We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

e. The limit of $50,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

f. This coverage is not limited by the expiration of this policy.

g. This coverage is additional insurance and does not reduce the amount of insurance.

h. No deductible applies to this coverage.

## SECTION I – LOSSES WE DO NOT COVER

Under **LOSSES WE DO NOT COVER UNDER COVERAGES A and B:**

Item **1**.f. is deleted and replaced by the following:

**1**.f. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance, unless such seepage or leakage of water or steam and the resulting damage is unknown to all **"insureds"** and is hidden within walls, beneath the floors, above the ceilings, or behind a stationary appliance, such as a refrigerator, dishwasher, or washing machine;

Under **LOSSES WE DO NOT COVER UNDER COVERAGES A, B, C, D and E:**

Item **1. h. Intentional Loss** is deleted and replaced by the following:

**1. h. Intentional Loss.**

a. We do not provide coverage for any loss arising out of any act committed by or at the direction of an **"insured"** with the intent to cause a loss.

b. However, this exclusion will not apply to deny payment to an innocent co-**"insured"** who did not cooperate in or contribute to the creation of the loss if:

(1)  Such loss arose out of a pattern of criminal domestic violence and abuse; and

(2)  The perpetrator of the loss is criminally prosecuted for the act causing the loss.

c. If we pay a claim pursuant to Paragraph **1.h.b.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Liability.

## SECTION I– CONDITIONS

Item **10. Loss Payment** is deleted and replaced by the following:

0901119cab05ce01                                            USAA Confidential

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

## SECTION II– ADDITIONAL COVERAGES*

Item **4. Loss Assessment** is deleted in its entirety and replaced by the following:

**4. Loss Assessment.**

    a. We will pay up to $50,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

        (1) **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

        (2) Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

            (a) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

            (b) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

    b. SECTION II, Coverage L – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

    c. This coverage applies only to loss assessments charged against you as owner or tenant of the **"described location"**.

    d. We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

    e. This coverage applies to a covered **"occurrence"** or act even if assessed after the expiration of this policy.

    f. Regardless of the number of assessments, the limit of $50,000 is the most we will pay for loss arising out of:

        (1) One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

        (2) A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

0901119cab05ce01

USAA Confidential

## SECTIONS I AND II– CONDITIONS

Under **4. Cancellation** item b. is deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address show in the Declarations or electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 14 days before the date cancellation takes effect.

(2) When this policy has been in effect for 60 days or less, and is not a renewal with us, we may cancel for any reason by letting you know at least 14 days before the date cancellation takes effect.

(3) When this policy has been in effect for more than 60 days or at any time if it is a renewal with us, we may cancel only as set form in item b.(1) above, or for one or more of the following reasons.

(a) Upon discovery of fraud or material misrepresentation made by, or with the knowledge of, the named insured in obtaining or continuing this policy, or in presenting a claim under this policy;
(b) Upon discovery of willful or reckless acts or omissions on the part of the named insured which increase any hazard insured against;
(c) Upon the occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;
(d) If there is a violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy of such property which substantially increases any hazard insured against; or
(e) If we are unable to reinsure the risk covered by the policy.
(f) Determination by the commissioner that the continuation of the policy would place the insurer in violation of the insurance laws of this state.

This can be done by letting you know at least 75 days before the date cancellation takes effect.

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the returned premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

Item **5. Nonrenewal** is deleted and replaced by the following:

USAA Confidential

0901119cab05ce01

**5. Nonrenewal.** We may elect not to renew this policy. We may do so by delivery to you, mailing to you at your address show in the Declarations, or sent electronically if we have your consent and agreement on file to receive documents electronically, written notice at least 75 days before:

a. The expiration date of the policy, for a policy written for a term of one year or less; or

b. An anniversary date of the policy, for a policy written for a term of more than one year or for an indefinite term.

If we mail or deliver a renewal notice to you at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to you at your last known address a notice that the policy was not renewed and the date it was terminated.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

Under **6. Subrogation** the following is added:

If we pay an innocent co-**"insured"** for a loss caused by an act of domestic abuse, the rights of that **"insured"** to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That **"insured"** may not waive such rights to recover again the perpetrator of the domestic abuse.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement

*Applicable only when you have purchased COVERAGE L and COVERAGE M.

Copyright, USAA, 2017. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**DP-KY** (08-16)

0901119cab05ce01

USAA Confidential

0901119cab05ce01

USAA Confidential


USAA®

# NOTICE OF POLICY CHANGES

We are making some changes to your rental property insurance policy. The changes are outlined below with the changes identified in the column labeled "Change". Any "Change" is effective with this renewal. The column labeled "Notes" provides an additional explanation of the change.

If, after reviewing these changes and explanations, you have any questions, please contact us at 210-531-USAA (8722), our mobile shortcut #8722 or 800-531-8722.

**Coverage descriptions are necessarily brief. For exact terms and conditions, please refer to your enclosed policy. In the event of an inconsistency between this notice and your policy, your policy provisions will control.**

## POLICY CHANGES

| Policy Provision | Prior to this renewal | Change | Notes |
|---|---|---|---|
| **DEFINITIONS: Actual cash value** | **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property at the time of loss or damage, with material of like kind and quality, subject to a to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained a partial or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost. | The new definition is as follows : **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property at the time of loss or damage, with material of like kind and quality, subject to a to a deduction for obsolescence and a **"deduction for depreciation".** The **"deduction for depreciation"** will be determined as follows: For Coverage A or B, the deduction will be based on the age and condition of the materials making up the damaged property and will apply to materials, labor, sales tax and overhead and profit that are included in the cost to repair or replace the damaged property.<br><br>For Coverage C, the deduction will be based on the age and condition of the damaged item and will apply to the cost of the item and any sales tax that is included in the cost to repair or replace the damaged item. | The definition of Actual cash value was revised to add an explanation of how the deduction for depreciation is determined for Coverages A, B and C. |

0901119cab05ce01

USAA Confidential

| | | | |
|---|---|---|---|
| | **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained a partial or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost. | | |
| **SECTION I – ADDITIONAL COVERAGES: Loss Assessment** | The limit for this coverage is $10,000. | The limit for this coverage is $50,000. | The limit for this coverage increased from $10,000 to $50,000. |
| **SECTION I – LOSSES WE DO NOT COVER: Exclusion for Constant or Repeated Seepage** | Exclusion applies if the damage is caused by constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating or air conditioning system or from within a household appliance. | Exclusion applies if the damage is caused by constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating or air conditioning system or from within a household appliance, unless the seepage or leakage and the resulting damage is unknown to all insureds and is hidden within walls, floors, or ceilings or behind a stationary appliance. | Coverage was expanded so that damage caused by constant or repeated seepage or leakage is covered if the leak and resulting damage is unknown to all insureds and is hidden within walls, floors, or ceilings or behind a stationary appliance. |
| **SECTION II – ADDITIONAL COVERAGES: Loss Assessment** | The limit for this coverage is $10,000. | The limit for this coverage is $50,000. | The limit for this coverage increased from $10,000 to $50,000. |

DPCVCHGA (08-16)

0901119cab05ce01

USAA Confidential



GAR 042003497 80A0

# Adjusted Renewal Policy Limit

We truly care about the financial well-being of each of our members, but it's also our obligation to make sound business decisions for the membership as a whole. That's why we review your policy limits yearly to ensure they are adequate to cover future losses. Based on our latest review, your policy limits and premiums have been adjusted as shown below.

| Coverage | Current Limit | Renewal Limit |
|---|---|---|
| | 0 | 28200 |

| Premium | Current Amount | Renewal Amount |
|---|---|---|
| | $2,387 | $2,460 |

Also, other policy limits and premiums may have been adjusted because of the changes above. Please refer to the Declarations page for a complete list of your policy coverages. If you have questions or want to review your coverage and deductibles to ensure they meet your needs, please call us at 1-800-531-USAA (8722).

**KYAPL01** 04-10

94156-0410
**Page 1 of 1**

USAA Confidential

0901119cab05ce01

0901119cab05ce01

USAA Confidential

GAR 042003497 80A0

## Your Home Characteristics

Our mission at USAA is to help protect your financial security. One way we do this is by helping you determine if you're adequately covered in the event of a loss. We can calculate the minimum rebuilding cost of your home based on your home characteristics, but only you can decide if this is enough coverage. Our estimates are based on average construction costs and labor costs for geographic areas and may not reflect the unique features of your home or the area you live in.

On the back of this page, you'll find your home characteristics. If any of the information is incorrect, the rebuilding cost may be affected, so please revise any inaccuracies by:

- Logging on to usaa.com, selecting your policy and then Home Characteristics, or
- Calling us at 210-531-USAA (8722), our mobile shortcut #8722 or 800-531-8722.

**Should I adjust the coverage on my flood or wind policy?**
- If you have a separate flood or wind policy for this property, please call your agent or insurer to confirm that your coverage is adequate. For flood or wind policies serviced by the USAA Insurance Agency, please call us at the numbers listed above. Wind coverage is available in Alabama, Florida, North Carolina, South Carolina, Texas and Mississippi.

**60321(04)** Rev.10-15

60321-1015
Page 1 of 2

0901119cab05ce01

USAA Confidential

## Your Home Characteristics

```
                 YEAR BUILT:  2010
      *TOTAL SQUARE FOOTAGE:  3000
          NUMBER OF STORIES:  2.0
```

*Total Square Footage:
Includes: Additions and Finished Attic Space
Excludes: Basements and Built-in or Attached Garages

```
        GENERAL SHAPE AND STYLE:  ABOVE AVERAGE
     EXTERIOR FINISHES & FEATURES:  ABOVE AVERAGE
     INTERIOR FINISHES & FEATURES:  ABOVE AVERAGE
              KITCHENS AND BATHS:  ABOVE AVERAGE
      EXTERIOR WALL CONSTRUCTION:  SIDING - VINYL
                 FOUNDATION TYPE:  CRAWLSPACE
                       ROOF TYPE:  COMPOSITION - ARCHITECTURAL SHINGLE
     YEAR ROOF INSTALLED/REPLACED:  2010
     GARAGE OR CARPORT TYPE/STYLE:  ATTACHED/BUILT-IN - 2 CAR
         FLOOR COVERING MATERIALS:  HARDWOOD - BAMBOO, HARDWOOD - PLANK
             NUMBER OF BATHROOMS:  HALF 1, FULL 2
                      FIREPLACES:  NONE
```

USAA Confidential

0901119cab05ce01

USAA Casualty Insurance Company



USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

CIC 097470246 785

# Special Form - Rental Property Insurance

## **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

**Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.**

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. This policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

**IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## QUICK REFERENCE

| | Page | | Page |
|---|---|---|---|
| **AGREEMENT** | 1 | **LOSSES WE COVER** | 10 |
| **DEFINITIONS** | 1 | Dwelling and Other Structures | |
| **DEDUCTIBLE** | 3 | Personal Property | |
| **SECTION I** | | | |
| **PROPERTY WE COVER** | 4 | **LOSSES WE DO NOT COVER** | 12 |
| Dwelling | | | |
| Other Structures | | **CONDITIONS** | 15 |
| Personal Property | | | |
| Property We Do Not Cover | | **SECTION II** | |
| Fair Rental Value | | **LIABILITY COVERAGES** | 21 |
| Additional Living Expense | | Personal Liability | |
| **ADDITIONAL COVERAGES** | 6 | Medical Payments To **Others** | |
| Debris Removal | | | |
| Reasonable Repairs | | **EXCLUSIONS** | 22 |
| Trees, Shrubs, and Other Plants | | | |
| Fire Department Service Charge | | **ADDITIONAL COVERAGES** | 26 |
| Property Removed | | Claims Expenses | |
| Loss Assessment | | First Aid Expenses | |
| Collapse | | Damage to Property of **Others** | |
| Land | | Loss Assessment | |
| Glass or Safety Glazing Material | | | |
| Building Ordinance or Law | | **CONDITIONS** | 27 |
| Fungus, or Wet or Dry Rot | | **SECTIONS I and II** | |
| | | **CONDITIONS** | 29 |

0901119cab05ce01

USAA Confidential

In your policy these set of words have the same meaning: Policy means Contract; You and your means the Subscriber and the spouse when a resident of the same household; We, us, our, USAA, Company, Reciprocal or Interinsurance Exchange means United Services Automobile Association; Premium means Deposit; Attorney-in-Fact means USAA Reciprocal Attorney-in-Fact, Inc.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a **member"** of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 1903 of the Texas Insurance Code of 1951, as amended.

- This is a participating policy. You are entitled to dividends as may be declared by the USAA Board of Directors.

- The USAA Board of Directors may annually allocate a portion of USAA's surplus to subscriber's accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A **"member"** shall have no right to any balance in the **"member's"** account except until following termination of membership, as provided in the bylaws.



0901119cab05ce01

USAA Confidential

USAA Casualty Insurance Company

**Rental Property Insurance DP-3(02)**
**Special Form (08-13)**
**DP-2013 Program**

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss or total loss. The "actual cash value" of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as:

   a. Emotional distress;

   b. Humiliation;

   c. Mental anguish;

   d. Mental distress, or any similar injury

   unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any "insured".

5. **"Collapse"** means:

   a. A sudden falling or sudden caving in; or

   b. A sudden breaking apart or sudden deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered unless it is the direct result of **"collapse"**.

6. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance. **"Damages"** does not include punitive, exemplary or multiple damages.  "Damages" also does not include prejudgement interest, fines or penalties awarded against an **"insured"**.

7. **"Described location"** means the location shown in the Declarations. **"Described location"** also includes other structures and grounds at that location.

8. **"Fungus"** means any microorganism or by-product of any microorganism, including, but not limited to, mold, mildew, fungi, mycotoxins and spores.

0901119cab05ce01

USAA Confidential

9. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

10. **"Insured"** means:

   a. The **"primary insured"**;

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

     (1) Your relatives; or

     (2) Other persons under the age of 21 and in the care of any person named above.

   Under SECTION II, **"insured"** also means:

   d. With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 10.a.,10.b., or 10.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** without consent of the owner is not an **"insured"**.

   e. With respect to any vehicle or conveyance to which this policy applies:

     (1) **"Residence employees"** while engaged in your employ or that of any person included in 10.a., 10.b., or 10.c. above; or

     (2) Other persons using the vehicle on an **"insured location"** with your consent.

11. **"Insured location"** means:

   a. The **"described location"** as listed in the Declarations;

   b. Any premises used by you in connection with 11.a. above; or

   c. Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured"**.

12. **"Motor vehicle(s)"** means:

   a. Any type of motorized land or amphibious vehicle or conveyance; or

   b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by any vehicle described in 13.a. above.

13. **"Named peril(s)"** means one or more of the perils listed under SECTION I – LOSSES WE COVER – COVERAGE C – Personal Property.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. **"Bodily injury"**; or
   b. **"Property damage"**.

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump as the primary source of propulsion.

16. **"Pollutants"** means any:
   a. Solid;
   b. Liquid;
   c. Gaseous; or
   d. Thermal irritant or contaminant

0901119cab05ce01

USAA Confidential

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Primary Insured"** means the person who owns this policy, is a named insured, and whose USAA number is included on the declarations page.

18. **"Professional services"** means any type of service to the public that requires those rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service. Professional services include, but are not limited to services rendered by:

   a. Accountants;
   b. Architects and landscape architects;
   c. Attorneys-at-law;
   d. Chiropractors;
   e. Counselors and social workers;
   f. Doctors of dentistry;
   g. Engineers;
   h. Land surveyors;
   i. Naturopaths;
   j. Nurses and nurse-midwives;
   k. Occupational therapists;
   l. Optometrists;
   m. Pharmacists;
   n. Physicians and surgeons;
   o. Physical therapists;
   p. Podiatrists;
   q. Psychologists;
   r. Therapists; and
   s. Veterinarians.

19. **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

20. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"described location"**, including household or domestic service.

21. **"Sudden and Accidental"** means an abrupt, fortuitous event which is unexpected or unintended from the perspective of a reasonable person.

22. **"Vacant"** means unoccupied and contains no furniture. The dwelling is occupied only when someone resides on the **"described location"** at the time of loss or the **"described location"** is leased at the time of loss.

23. **"War"** means:

   a. War whether declared or undeclared;
   b. Civil war;
   c. Insurrection;
   d. Rebellion;
   e. Revolution;
   f. Any warlike act by friendly or enemy forces; or
   g. Destruction or seizure for a military purpose.

24. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

---

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provisions apply:

1. With respect to any one loss and subject to the applicable amount of insurance, we will pay only that part of the total of all loss payable under SECTION I – PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

USAA Confidential

0901119cab05ce01

2.  If two or more deductibles under this policy apply to any one loss, only the highest deductible amount will apply.

---

## SECTION I – PROPERTY WE COVER

**COVERAGE A – Dwelling**

We cover:

1.  The dwelling on the **"described location"** shown in the Declarations, including structures attached to the dwelling;

2.  Materials and supplies located on or next to the **"described location"** used to construct, alter or repair the dwelling or other structures on the **"described location"**;

3.  Custom or permanently installed window treatments and permanently installed carpeting; and

4.  If not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the **"described location"**.

Except as specifically provided in SECTION I – ADDITIONAL COVERAGES, **Land**, we do not cover land, including land on which the dwelling is located.

**COVERAGE B – Other Structures**

1.  We cover other structures on the **"described location"**, including sidewalks, driveways and fences, that are:

    a.  Set apart from the dwelling by clear space; or

    b.  Connected to the dwelling by only a fence, utility line, or similar connection.

2.  We do not cover:

    a.  Land, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, **Land**. This includes land on which the other structures are located;

    b.  Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

    c.  Structures used in whole or part for **"business"** unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

        (1)  Duties of any **"insured's"** or resident's employment by another; and

        (2)  Performed solely by any **"insured"** or resident.

**COVERAGE C – Personal Property**

We cover personal property:

1.  Usual to the occupancy as a dwelling; and

2.  Owned or used by you or members of your family residing with you while it is on the **"described location"**.

This includes your appliances, your carpeting and your household furnishings that are not permanently installed and are located on the **"described location"**.

**Property We Do Not Cover:**

**1.**  Animals, birds or fish;

USAA Confidential

0901119cab05ce01

2. Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, gold other than goldware, letters of credit, manuscripts, medals, money, notes other than bank notes, passports, personal records, platinum other than platinumware, securities, silver other than silverware, tickets, stamps, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates;

3. **"Motor vehicle(s)".** This includes but is not limited to the following while in or upon a **"motor vehicle"**:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media for use with any such device or instrument.

   We do cover **"motor vehicle(s)"** not subject to motor vehicle registration which are:

   a. Used solely to service any residence; or

   b. Designed for assisting the handicapped;

4. **"Aircraft"** and parts;

5. **"Hovercraft"** and parts;

6. Personal property of lessees, roomers, roommates, boarders, other tenants, or the guest or servant of any of these;

7. **"Business"** data, records, recordings, images and photographs including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic storage media.

   However, we do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

8. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

9. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds;

10. **"Watercraft"** or **"Personal Watercraft"**, other than rowboats, kayaks and canoes;

11. Grave markers, including mausoleums;

12. Water or steam; or

13. Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

**COVERAGE D – Fair Rental Value**

SECTION I – LOSSES WE DO NOT COVER applies to the coverage provided below.

1. If a loss to property described in COVERAGE A, COVERAGE B or COVERAGE C covered by SECTION I – LOSSES WE COVER makes that part of the **"described location"** rented to others or held for rental by you unfit for its normal use, we cover the fair rental value of that part of the **"described location"** rented to others or held for rental by you less any expenses that do not continue while the premises is unfit for its normal use.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

USAA Confidential

0901119cab05ce01

2. You may use up to 10% of the COVERAGE A amount of insurance for loss of both Fair Rental Value as described in COVERAGE D and Additional Living Expense as described in COVERAGE E. If both COVERAGE D and COVERAGE E apply to the same loss we will pay no more than 10% of the COVERAGE A limit.

3. If a civil authority prohibits you from use of the **"described location"** as a result of direct damage to a neighboring location by a loss covered by SECTION I – LOSSES WE COVER in this policy, we cover the Fair Rental Value loss for no more than two weeks.

4. The periods of time referenced above are not limited by the expiration of this policy.

5. We do not cover loss or expense due to cancellation of a lease or agreement.

6. Except as provided in SECTION I – ADDITIONAL COVERAGES, **"Fungus", or Wet or Dry Rot**, the Fair Rental Value coverage afforded above does not apply to loss caused by **"fungus"**, or wet or dry rot.

7. Use of this coverage does not reduce the COVERAGE A amount of insurance for the same loss.

**COVERAGE E – Additional Living Expense**

SECTION I – LOSSES WE DO NOT COVER applies to the coverage provided below.

1. a. If a loss to property described in COVERAGE A, COVERAGE B or COVERAGE C covered by SECTION I – LOSSES WE COVER makes that part of the **"described location"** where you reside unfit for its normal use, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

   b. Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere; in either event, not to exceed 12 months.

   c. However, if a loss covered under SECTION I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be the for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere; in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Additional Living Expense.

2. You may use up to 10% of the COVERAGE A amount of insurance for loss of both Fair Rental Value as described in COVERAGE D and Additional Living Expense as described in COVERAGE E. If both COVERAGE D and COVERAGE E apply to the same loss we will pay no more than 10% of the COVERAGE A limit.

3. If a civil authority prohibits you from use of the **"described location"** as a result of direct damage to a neighboring location by a loss covered by SECTION I – LOSSES WE COVER in this policy, we cover the Additional Living Expense loss for no more than two weeks.

4. The periods of time referenced above are not limited by the expiration of this policy.

5. We do not cover loss or expense due to cancellation of a lease or agreement.

6. Except as provided in SECTION I – ADDITIONAL COVERAGES, **"Fungus", or Wet or Dry Rot**, the Additional Living Expense coverage afforded above does not apply to loss caused by **"fungus"**, or wet or dry rot.

7. Use of this coverage does not reduce the COVERAGE A amount of insurance for the same loss.

## SECTION I – ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. SECTION I – LOSSES WE DO NOT COVER applies to these coverages unless otherwise stated.

0901119cab05ce01

USAA Confidential

1. **Debris Removal.**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under SECTION I – LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"described location"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**,

      provided the tree(s)

      (1) Damage(s) a covered structure; or

      (2) Do(es) not damage a covered structure, but:

         (a) Block(s) a driveway on the **"described location"** which prevents a **"motor vehicle"** that is registered for use on public roads or property from entering or leaving the **"described location"**; or

         (b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

      The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

      This coverage reduces the amount of insurance that applies to the covered property and is subject to the applicable deductible for the covered loss.

2. **Reasonable Repairs.**

   a. In the event that covered property is damaged by an applicable loss under SECTION I – LOSSES WE COVER, we will pay the reasonable expense incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under SECTION I LOSSES WE COVER.

   b. This coverage reduces the amount of insurance that applies to the covered property and is subject to the applicable deductible for the covered loss.

   c. This coverage does not relieve you of your duties in case of a loss to covered property, as set forth in SECTION I – CONDITIONS, 2.c.

3. **Trees, Shrubs and Other Plants.**

   a. We cover trees, shrubs, plants, or lawns on the **"described location"** for loss caused by the following SECTION I – LOSSES WE COVER: Fire or lightning; Explosion; Riot or civil commotion; **"Aircraft"**; Vehicles not owned or operated by a resident of the **"described location"**; Vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not theft of property.

USAA Confidential

0901119cab05ce01

   b. We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

   c. This coverage is additional insurance and does not reduce the amount of insurance. This coverage is subject to the applicable deductible for the covered loss.

**4. Fire Department Service Charge.**

   a. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under SECTION I – LOSSES WE COVER.

   b. This coverage is additional insurance and does not reduce the amount of insurance.

   c. No deductible applies to this coverage.

**5. Property Removed.**

   a. We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under SECTION I – LOSSES WE COVER and for no more than 30 days after the property has been removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

   b. This coverage reduces the amount of insurance that applies to the property being removed and is subject to the applicable deductible for the covered loss.

**6. Loss Assessment.**

   a. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property owned by all members collectively, caused by a loss under SECTION I – LOSSES WE COVER for COVERAGES A – Dwelling and COVERAGE B – Other Structures, subject to all provisions of the policy.

   b. This coverage does not apply to assessments made as a result of damage caused by:

     (1) Earthquake; or

     (2) Land shock waves or tremors before, during or after a volcanic eruption.

   c. This coverage applies only to loss assessments charged against you as owner or tenant of the **"described location"**.

   d. We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

   e. The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

   f. This coverage is not limited by the expiration of this policy.

   g. This coverage is additional insurance and does not reduce the amount of insurance.

   h. No deductible applies to this coverage.

**7. "Collapse".**

For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

0901119cab05ce01

USAA Confidential

a. **"Named peril(s)"** that apply to covered buildings and personal property for loss insured by this additional coverage;

b. Decay that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the covered property and is subject to the applicable deductible for the covered loss.

8. **Land.**

   a. If a loss covered under SECTION I – LOSSES WE COVER damages a building on the **"described location"** insured under COVERAGE A – Dwelling or COVERAGE B – Other Structures and the same loss causes the land necessary to support the building insured under COVERAGE A – Dwelling or COVERAGE B – Other Structures to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

   b. This coverage is additional insurance and does not reduce the amount of insurance.

   c. This coverage is subject to the applicable deductible for the covered loss.

9. **Glass or Safety Glazing Material.**

   We cover:

   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

   b. Damage to covered property by glass or safety glazing material which is part of a covered building, storm door or storm window.

   This coverage does not include loss on the **"described location"** if the dwelling has been **"vacant"** for more than 90 consecutive days immediately before the loss. An insured dwelling being constructed or remodeled is not considered **"vacant"** for purposes of this additional coverage.

   This coverage reduces the amount of insurance that applies to the covered property and is subject to the applicable deductible for the covered loss.

10. **Building Ordinance or Law.**

    a. For loss caused by a loss covered under SECTION I – LOSSES WE COVER to buildings under COVERAGE A – Dwelling and COVERAGE B – Other Structures, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

    b. The limit for this coverage will not be more than 5% of the COVERAGE A – Dwelling amount of insurance.

    c. This coverage is additional insurance and does not reduce the Dwelling amount of insurance.

    d. The policy deductible applies.

0901119cab05ce01

USAA Confidential

11. **"Fungus", or Wet or Dry Rot.**

   a.  If as a direct result of a loss covered under SECTION I – LOSSES WE COVER, we will pay up to a total of $2,500 for:

     (1)  The cost to treat, remove or dispose of **"fungus",** or wet or dry rot from covered property;

     (2)  The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus",** or wet or dry rot; and/or

     (3)  The cost to test, detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus",** or wet or dry rot whether performed prior to, during or after removal, repair, restoration, or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus".**

   b.  If as a direct result of a loss covered under SECTION I – LOSSES WE COVER, we will pay up to a total of $2,000 for:

     (1)  The necessary increase in costs which you incur to maintain your normal standard of living when the **"described location"** is unfit for its normal use due to a loss caused by, resulting from, or consisting of **"fungus",** or wet or dry rot which is the direct result of SECTION I – LOSSES WE COVER; or

     (2)  The fair rental value of that part of the **"described location"** rented to others or held for rental by you less any expenses that do not continue while that part of the **"described location"** rented or held for rental is not fit to live in due to a loss caused by, resulting from, or consisting of **"fungus",** or wet or dry rot which is the direct result of SECTION I – LOSSES WE COVER.

   c.  This coverage is additional insurance and does not reduce the amount of insurance.

   d.  No deductible applies to this coverage once the policy deductible has been met.

## SECTION I – LOSSES WE COVER

### COVERAGE A – Dwelling and COVERAGE B – Other Structures

We insure against **"sudden and accidental"** direct physical loss to tangible property described in SECTION I – PROPERTY WE COVER – COVERAGES A and B unless excluded in SECTION I – LOSSES WE DO NOT COVER.

### COVERAGE C – Personal Property

We insure against **"sudden and accidental"** direct physical loss to tangible property described in SECTION I – PROPERTY WE COVER – COVERAGE C caused by a peril listed below unless the loss is excluded in SECTION I – LOSSES WE DO NOT COVER UNDER COVERAGES A, B, C, D and E.

1. **Fire or lightning.**

2. **Wind or hail.**

   This peril does not include loss to:

   a.  Rowboats, kayaks and canoes unless inside a fully enclosed building;

   b.  Property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening; or

   c.  Trees, shrubs or plants.

3. **Explosion.**

0901119cab05ce01

USAA Confidential

4. **Riot or civil commotion.**

5. **"Aircraft",** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning damage caused by or resulting from an impact with a **"motor vehicle".** This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke,** meaning **"sudden and accidental"** damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

   This peril does not include loss by pilferage, theft, burglary or larceny.

9. **Damage by burglars.**

   a. This peril means damage to covered property caused by burglars.

   b. This peril does not include:

      (1) Theft of property; or

      (2) Damage caused by burglars to property on the **"described location"** if the dwelling has been vacant for more than 90 consecutive days immediately before the damage occurs. A dwelling being constructed or remodeled is not considered **"vacant".**

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to property contained in a building.

12. **Discharge or overflow of water or steam.**

    **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    **b.** This peril does not include loss:

       (1) To the system or appliance from which the water or steam escaped;

       (2) Caused by or resulting from freezing except as provided in the peril of Freezing below; or

       (3) On the **"described location"** caused by discharge or overflow which occurs off the **"described location".**

    c. In this peril, a plumbing system does not include:

       (1) A sump pump or sump well; or

       (2) A roof drain, gutter, or downspout.

    d. Under SECTION I – LOSSES WE DO NOT COVER UNDER COVERAGES A, B, C, D, and E, **1.c. Water Damage**, paragraphs (1) and (4) that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **"Sudden and accidental" tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing except as provided in the peril of Freezing below.

0901119cab05ce01

USAA Confidential

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

   a. This peril does not include loss on the **"described location"** while the dwelling is unoccupied if you have failed to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain the system and appliances of water.

   b. In this peril, a plumbing system does not include:

      (1) A sump pump or sump well; or

      (2) A roof drain, gutter, or downspout.

   c. The dwelling is occupied for purposes of this provision only when someone resides on the **"described location"** at the time of loss, or the **"described location"** is leased at the time of loss.

15. **"Sudden and accidental" damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I – LOSSES WE DO NOT COVER

### LOSSES WE DO NOT COVER UNDER COVERAGES A and B

1. Unless otherwise stated in 3. below, we do not insure for loss or damage consisting of, or caused directly or indirectly by, the perils or events in paragraphs a. through q. below:

   (i) Regardless of the cause of the excluded event or peril, or any other cause of the same loss, whether or not any other cause acts concurrently or in any sequence with the excluded cause, peril, or event to produce the loss; or

   (ii) Regardless of whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of a. through q. to produce the loss.

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

      (1) This exclusion applies only while the dwelling is unoccupied or being constructed or remodeled and then, only if you have failed to:

         (a) Maintain heat in the building; or

         (b) Shut off the water supply and drain the system and appliances of water.

      (2) In this peril, a plumbing system does not include:

         (a) A sump pump or sump well; or

         (b) A roof drain, gutter, or downspout.

      (3) The dwelling is occupied for purposes of this provision only when someone resides on the **"described location"** at the time of loss, or the **"described location"** is leased at the time of loss;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Swimming pool, hot tub, or spa, including their filtration and circulation system;

      (2) Fence, pavement, patio;

0901119cab05ce01

USAA Confidential

    (3) Footing, foundation, retaining wall or bulkhead; or

    (4) Pier, wharf or dock;

c. Theft of property not part of a covered building or structure;

d. Theft in or to a dwelling or structure under construction;

e. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been **"vacant"** for more than 90 consecutive days immediately before the loss. A dwelling being constructed or remodeled is not considered **"vacant"**;

f. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

g. Wear and tear, marring, deterioration;

h. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

i. Smog, rust, electrolysis or other corrosion;

j. Smoke from agricultural smudging or industrial operations;

k. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"**;

l. Settling, cracking, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

m. Domestic animals;

n. Animals owned or kept by any **"insured"**, tenant or a member of the tenant's household;

o. Vermin, including but not limited to birds, rodents, insects, armadillos, bats, bees, ferrets, opossums, porcupines, raccoons, skunks, and squirrels;

p. Nesting, infestation, discharge or release of waste products or secretions by birds, rodents, insects, bees, vermin or any other animal;

q. Pressure from, presence of or intrusion of tree, shrub or plant roots.

**2.** If items 1.g. through 1.q. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or household appliance. We do not cover loss to the system or appliance from which this water escaped.

**3.** If any item in 1.a. through 1.q. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

## LOSSES WE DO NOT COVER UNDER COVERAGES A, B, C, D and E

**1.** We do not insure for loss or damage consisting of, or caused directly or indirectly by any of the following, regardless of:

    (i) The cause of the excluded event or peril, or any other cause of the same loss, whether or not any other cause acts concurrently or in any sequence with the excluded cause, peril, or event to produce the loss; or

    (ii) Whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of a. through k. to produce the loss.

USAA Confidential

a. **Ordinance or Law,** meaning:

    (1) The increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in SECTION I – ADDITIONAL COVERAGES, **Building Ordinance or Law**; or

    (2) Requiring any **"insured"** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **"pollutants"**.

b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

    (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    (2) Landslide, mudslide or mudflow;

    (3) Subsidence, sinkhole, or erosion; or movement resulting from improper compaction, site selection or any other external forces; or

    (4) Any other earth movement including earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not

unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of a building, storm door or storm window ensues and then we will pay only for the ensuing loss.

c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

    (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind;

    (2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device;

    (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

    (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure

unless direct loss by fire or explosion results from water damage and then we will pay only for the resulting loss.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **"described location"**.

If damage caused by a loss insured under SECTION I – LOSSES WE COVER results on the **"described location"**, we will pay only for that damage.

e. **Neglect** by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard.**

    (1) Meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    (2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within SECTION I – LOSSES WE COVER.

0901119cab05ce01

USAA Confidential

(3) This policy does not apply under SECTION I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i. **"Fungus", Wet or Dry Rot or Bacteria,** other than as provided in SECTION I – ADDITIONAL COVERAGES, **"Fungus" or Wet or Dry Rot.**

j. **"Collapse",** other than as provided in SECTION I ADDITIONAL COVERAGES, **"Collapse".**

k. **Diminution in value,** meaning any reduction in value that would remain after damaged property is repaired or replaced.

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in COVERAGE A – Dwelling and COVERAGE B – Other Structures not precluded by any other provision in this policy is covered.

a. **Weather Conditions,** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in SECTION I – LOSSES WE DO NOT COVER UNDER COVERAGES A, B, C, D and E item 1. above to produce the loss.

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

c. **Faulty, negligent, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance.

This limitation applies to loss or damage to any property on or off the **"described location".**

## SECTION I CONDITIONS

1. **Insurable Interest and Amount of Insurance.**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. For an amount greater than the interest of a person insured under this policy at the time of loss; or

b. For more than the applicable amount of insurance.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

0901119cab05ce01                    USAA Confidential

c.  (1)  Protect the property from further damage;

    (2)  Make reasonable and necessary repairs to protect the property; and

    (3)  Keep an accurate record of repair expenses;

d.  Cooperate with us in the investigation of a claim;

e.  At our request, prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

f.  As often as we reasonably require:

    (1)  Show the damaged property;

    (2)  Provide us with records and documents we request and permit us to make copies; and

    (3)  Submit to and sign, while not in the presence of any other **"insured"**:

        (a)  Statements; and

        (b)  Examinations under oath; and

    (4)  Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so; and

g.  Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

    (1)  The time and cause of loss;

    (2)  The interest of the **"insured"** and all others in the property involved and all liens on the property;

    (3)  Other insurance which may cover the loss;

    (4)  Changes in title or occupancy of the property during the term of the policy;

    (5)  Specifications of damaged buildings and detailed repair estimate;

    (6)  The inventory of claimed personal property described in **2.**e. above; and

    (7)  Receipts for Additional Living Expenses incurred and records that support any Fair Rental Value loss.

**3.**  **Loss Settlement.** We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to SECTION I – ADDITIONAL COVERAGES or the Home Protector endorsement.

Subject to the amount of insurance, covered losses are settled as follows:

a.  For the following property:

    (1)  Outdoor antennas, satellite dishes, and outdoor equipment, whether or not attached to buildings; and

    (2)  Structures that are not buildings;

We will pay the lesser of:

    (1)  The **"actual cash value"**; or

    (2)  Our cost to replace the property with property of like kind, quality, age and condition; or

    (3)  Our cost to repair or our cost to restore the property to the condition it was in just before the loss.

0901119cab05ce01

b. **Loss Settlement for COVERAGE A – Dwelling and buildings on the "described location" under COVERAGE B – Other Structures:**

We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the **"described location"** shown in the Declarations subject to the following:

(1) When our cost to repair or replace the damaged property is equal to or less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

(2) When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

  (a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date we tender payment of **"actual cash value"**, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must notify us within 30 days after the work has been completed; and

  (b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

c. **Loss Settlement for Personal Property**

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

REPLACEMENT COST DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged or destroyed. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

(1) Similar to the insured article; and

(2) Of like quality and usefulness.

PROPERTY COVERED

(1) Personal property covered in SECTION I – PROPERTY WE COVER – Personal Property, except personal property stated in PROPERTY NOT ELIGIBLE below; and

(2) If covered in this policy, awnings, carpeting and household appliances, whether or not attached to buildings.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

(1) Items of rarity or antiquity that cannot be replaced;

(2) Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

(3) Articles not maintained in good or workable condition;

(4) Property that is either obsolete or useless to the **"insured"** at the time of loss;

(5) Property that you do not intend to repair, replace, or restore; and

(6) Outdoor antennas, satellite dishes, and outdoor equipment.

LOSS SETTLEMENT

USAA Confidential

0901119cab05ce01

(1) For property that is eligible for replacement cost coverage it is our option to:

   (a) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation;

   (b) Pay you the cost to repair or restore the property to the condition it was in just before the loss; or

   (c) Pay you the necessary amount actually spent to repair or replace the damaged property.

(2) We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

(3) You may make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

(4) For property that is not eligible for replacement cost coverage, it is our option to:

   (a) Pay you the **"actual cash value"**; or

   (b) Replace, or pay you our cost to replace the property with property of like kind, age, quality and condition; or

   (c) Pay you the cost to repair or restore the property to the condition it was in just before the loss.

(5) We will not pay more than the amount of insurance that applies to Personal Property.

**4. Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

   **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

   **b.** Pay the difference between **"actual cash value"** of the property before and after the loss.

**5. Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

   a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

   b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

**6. Appraisal.**

   a. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"described location"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   b. Each party will:

      (1) Pay its own appraiser; and

      (2) Bear the other expenses of the appraisal and umpire equally.

   c. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

0901119cab05ce01

USAA Confidential

d. This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

7. **Other Insurance and Service Agreement.**

   If a loss covered by this policy is also covered by:

   a. Other insurance, we will pay only the proportion of the loss that the amount of insurance applying under this policy bears to the total amount of insurance covering the property; or

   b. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

8. **Suit Against Us.** No action can be brought against us unless you have:

   a. Given us notice of the loss;

   b. Complied with all other policy provisions; and

   c. Started the action

   within two years after the date of the loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. We reach an agreement with you;

    b. There is an entry of a final judgement; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment.** You may not abandon property to us for any reason.

12. **Mortgage Clause.** The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any covered loss under SECTION I – LOSSES WE COVER for COVERAGE A – Dwelling or COVERAGE B – Other Structures will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

0901119cab05ce01

USAA Confidential

      (1) The time and cause of loss;

      (2) The interest of the mortgagee and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy; and

      (5) Specifications of damaged buildings and detailed repair estimates.

    Policy conditions relating to **Appraisal, Suit Against Us** and **Loss Payment** apply to the mortgagee.

d.   Submits to examinations under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a.   We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b.   At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt; and

c.   Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Salvage and Recovered Property.**

    a.   We have an interest in the salvage value of any property for which we have made a payment under the **Loss Settlement** Condition. At our option, property that we have paid for or replaced becomes our property.

    b.   If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

15. **Concealment, Misrepresentation or Fraud.**

    a.   At our option we may deny coverage or declare the entire policy void from the beginning of the policy term if you or any other **"insured"**, whether before or after the loss, has:

       (1) Intentionally concealed or misrepresented any material fact or circumstance;

       (2) Engaged in fraudulent conduct relating to this insurance; or

       (3) Made false statements which, if known by us, would have caused us not to:

          (a) Issue the policy;

          (b) Issue the policy in as large an amount;

          (c) Provide coverage for the hazard resulting in the loss; or

          (d) Issue the policy for the same amount of premium or at the same rate.

    If we void the policy we will refund the premium for that policy period. The premium refund will be offset by any claim amounts paid under this policy to any **"insured"** during this policy period.

    b.   Under a. above, we may seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

0901119cab05ce01                                      USAA Confidential

16. **Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

17. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

18. **Adjustment to Building Cost.**

    a. The amount of insurance for SECTION I, COVERAGE A – Dwelling shown in the Declarations, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

    b. SECTION I, COVERAGE B – Other Structures and COVERAGE D – Fair Rental Value, will also be adjusted.

    c. The rules then in use by us will determine the new amounts for these coverages. These amounts will not be reduced without your consent.

    d. You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

    e. We have the right to change to another replacement cost calculation tool as of any renewal date. Such change must apply to all similar policies issued by us.

19. **Reducing the Risk of Loss.**

    We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

20. **Changes.**

    a. The premium is based on information we have received from you and other sources. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, or is incorrect or incomplete, we may adjust your premiums accordingly during the policy period.

    b. If, during the policy period, you report to us that the dwelling at the **"described location"** is **"vacant"**, we will add the Amendment to Glass and Vandalism endorsement and make the necessary premium adjustments effective the date the endorsement is added.

    If the risk has changed substantially, any resulting premium adjustment does not guarantee continuation of coverage. Continuation of the policy is subject to underwriting guidelines.

---

## SECTION II – LIABILITY COVERAGES

---

**COVERAGE L– Personal Liability**

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** arising out of the ownership, maintenance, occupancy or use of the **"insured location"** and caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability. This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

**COVERAGE M – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"** and arising out of the ownership, maintenance, occupancy or use of the **"insured location"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral expenses. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"**, if the **"bodily injury"**:

   a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

   b. Is caused by the activities of any **"insured"**;

   c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

   d. Is caused by an animal owned by or in the care of any **"insured"**.

---

## SECTION II – EXCLUSIONS

---

1. **COVERAGE L – Personal Liability and COVERAGE M – Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which was or should have been reasonably expected or intended by any **"insured"**. This exclusion applies even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property than initially expected or intended.

      However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** conducted from an **"insured location"** or engaged in by any **"insured**, whether or not the **"business"** is owned or operated by an **"insured"** or employs an **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"** for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

   c. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**;

      (2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

      This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

USAA Confidential

0901119cab05ce01

    (1) A trailer not towed by or carried on a **"motor vehicle"**.

    (2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and:

       (a) Not owned by an **"insured"** ;

       (b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

       (c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

    (3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of a private residential community. This includes its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

    (4) A **"motor vehicle"** not subject to motor vehicle registration which is:

       (a) Used solely to service any **"insured's"** residence;

       (b) Designed for assisting the handicapped and the **"occurrence"** is on an **"insured location"**; or

       (c) In dead storage on an **"insured location"**.

d.  Arising out of:

    (1) The ownership, maintenance, use, loading or unloading of;

    (2) The entrustment by any **"insured"** to any person of; or

    (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

    (1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

    (2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

e.  Arising out of:

    (1) The ownership, maintenance, use, loading or unloading of; or

    (2) The entrustment by any **"insured"** to any person; or

    (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using an **"aircraft"** or **"hovercraft"**.

f.  Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g.  Arising out of the transmission of a communicable disease by any **"insured"**.

h.  Arising out of the:

    (1) Use;

    (2) Sale;

    (3) Manufacture;

0901119cab05ce01

USAA Confidential

(4) Delivery;

(5) Transfer; or

(6) Possession

by any person of any controlled substance(s). A controlled substance is defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of the **"occurrence"**. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed health care professional.

i. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **"pollutants"**.

j. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of lead paint, dust, chips, or other lead-based products.

k. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of asbestos.

l. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

m. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **"fungus",** wet or dry rot or bacteria.

n. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

o. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct;

(2) Sexual harassment; or

(3) Sexual molestation.

p. Arising out of any actual, alleged or threatened physical or mental abuse.

q. Arising out of illegal discrimination or violation of civil rights.

Exclusions 1.c., 1.d. and 1.e. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **COVERAGE L – Personal Liability** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II ADDITIONAL COVERAGES, **Loss Assessment**.

**DP-3(02) (08-13)**

127868 - 1014
**Page 24 of 31**

USAA Confidential

(2) Under any contract or agreement. However, unless excluded in (1) above or elsewhere in this policy, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

    (b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**.

b. **"Property damage"** to property owned by the **"insured"**.

c. **"Property damage"** to property rented to, occupied by, used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **"insured"** under any:

    (1) Workers' compensation law;

    (2) Non-occupational disability law; or

    (3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

    (1) Is also an insured under a nuclear energy liability policy issued by the:

        (a) Nuclear Energy Liability Insurance Association;

        (b) Mutual Atomic Energy Liability Underwriters;

        (c) Nuclear Insurance Association of Canada;

        or any of their successors; or

    (2) Would be an insured under such a policy but for the exhaustion of its limit of liability.

f. **"Bodily injury"** to you or any **"insured"** as defined under Definitions **10**. a., b., or c.

    This exclusion also applies to any claim made or suit brought against you or an **"insured"**:

    (1) To repay; or

    (2) Share damages with

    another person who may be obligated to pay damages because of **"bodily injury"** to an **"insured"**.

g. Punitive, exemplary or multiple damages, prejudgement interest, fines or penalties.

**3.** **COVERAGE M – Medical Payments to Others** does not apply to **"bodily injury"**:

a. To a **"residence employee"** if the **"bodily injury"**:

    (1) Occurs off the **"insured location"**; and

    (2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

b. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    (1) Workers' compensation law;

    (2) Non-occupational disability law; or

    (3) Occupational disease law.

c. From any of the following, whether controlled or uncontrolled or however caused:

    (1) Nuclear reaction;

    (2) Nuclear radiation;

0901119cab05ce01

USAA Confidential

(3) Radioactive contamination; or

(4) Any consequence of any of the above.

d.  To any person, other than a **"residence employee"** of any **"insured",** regularly residing on any part of the **"insured location"**.

---

## SECTION II – ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability:

1.  **Claim Expenses.** We pay:

    a.  Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

    b.  Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for COVERAGE L. We need not apply for or furnish any bond;

    c.  Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

    d.  Interest on the entire judgement which accrues after entry of the judgement and before we pay or tender, or deposit in court that part of the judgement which does not exceed the limit of liability that applies;

    e.  Prejudgement interest awarded against the **"insured"** on that part of the judgement we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2.  **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to any **"insured"**.

3.  **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

    We will not pay for **"property damage"**:

    a.  To the extent of any amount recoverable under SECTION I of this policy;

    b.  Caused intentionally by any **"insured"** who is 13 years of age or older;

    c.  To property owned by any **"insured"**;

    d.  To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

    e.  Arising out of:

        (1) A **"business"** engaged in by any **"insured"**;

        (2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

        (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

            (a) Is designed for recreational use off public roads;

---

0901119cab05ce01                    USAA Confidential

(b) Is not owned by any **"insured"**; and

(c) At the time and place of the **"occurrence"**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**4. Loss Assessment.**

a. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

(1) **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

(2) Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

(a) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(b) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

b. SECTION II, COVERAGE L – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

c. This coverage applies only to loss assessments charged against you as owner or tenant of the **"described location"**.

d. We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

e. This coverage applies to a covered **"occurrence"** or act even if assessed after the expiration of this policy.

f. Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

(1) One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

(2) A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

---

## SECTION II – CONDITIONS

**1. Limit of Liability.** The COVERAGE L limit is shown in the Declarations. This is our limit for all damages resulting from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

The COVERAGE M limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

**2. Severability of Insurance.** The SECTION II limits of liability of this policy apply separately to each **"insured"**. This condition will not increase our limit of liability for any one **"occurrence"**.

**3. Concealment, Misrepresentation or Fraud.** We may deny coverage as to the interest of all **"insureds"** if you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy, has:

a. Concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct relating to this insurance; or

c. Made false statements, which if known by us, would have caused us not to:

USAA Confidential

     (1)  Issue the policy;

     (2)  Issue the policy in as large an amount;

     (3)  Provide coverage for the hazard resulting in the loss; or

     (4)  Issue the policy for the same amount of premium or at the same rate.

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

**4.** **Duties After Loss.** In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

  a.  Give written notice to us or our agent as soon as is practical, which sets forth:

     (1)  The identity of the policy and **"insured"**;

     (2)  Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

     (3)  Names and addresses of any claimants and witnesses.

  b.  Cooperate with us in the investigation, settlement or defense of any claim or suit.

  c.  Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence".**

  d.  At our request, help us:

     (1)  To make settlement;

     (2)  To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

     (3)  With the conduct of suits and attend hearings and trials;

     (4)  To secure and give evidence and obtain the attendance of witnesses.

  e.  Under SECTION II – ADDITIONAL COVERAGES, **Damage to Property of Others**, if we request, submit to us within 60 days after notice of the loss, a sworn statement of loss and show the damaged property, if in the **"insured's"** control.

  f.  The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

**5.** **Duties of an Injured Person – COVERAGE M – Medical Payments to Others.** The injured person or someone acting for the injured person will:

  a.  Give us written proof of claim, under oath if required, as soon as is practical; and

  b.  Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**6.** **Payment of Claim – COVERAGE M –Medical Payment to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

0901119cab05ce01

USAA Confidential

7. **Suit Against Us.**

   a. No action can be brought against us unless there has been compliance with the policy provisions.

   b. No one will have the right to join us as a party to any action against any **"insured".** Also, no action with respect to COVERAGE L can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance – Coverage L –Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or **"bodily injury"** or to **"property damage"** in SECTION II which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, mailed to you by postal mail to the most recent address you provided us, or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

   Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

0901119cab05ce01

USAA Confidential

(a) Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

(b) If the risk has changed substantially since the policy was issued; or

(c) Any other reason allowed by law.

We will notify you at least 30 days before the date cancellation takes effect.

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail to the most recent address you provided us, or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

6. **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access.** The **"primary insured"** and we agree that the **"primary insured"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"primary insured"** and may conduct the same transactions as the **"primary insured"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"primary insured"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment.** Assignment of any claim or this policy will not be valid unless we give our written consent.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition **"insured"** includes:

USAA Confidential

0901119cab05ce01

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"described location";** and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2013. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119cab05ce01

USAA Confidential

DP-STL (08-13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SPECIAL TOTAL LOSS SETTLEMENT**

Dwellings

**TOTAL LOSS – LOSS SETTLEMENT**

**COVERAGE A - Dwelling**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, for COVERAGE A – Dwelling only, SECTION I – CONDITIONS, 3. Loss Settlement, item b. is deleted and replaced by the following:

b.   Under COVERAGE A – Dwelling: We will pay you the total amount of insurance for COVERAGE A – Dwelling shown on the Declarations page.

To receive any additional COVERAGE A – Dwelling payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

When repair or replacement is actually completed, we will pay the lesser of:

(1)   The covered additional amount you actually and necessarily spend; or

(2)   The amount it would cost us to repair or replace the dwelling.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**LIBERALIZATION**

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2013. All rights reserved.

0901119cab05ce01                                         USAA Confidential